IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHNNY RAY WALLACE,<br><br>        Petitioner,<br><br>vs.<br><br>WARDEN HAROLD MAY,<br><br>        Respondent. | CASE NO. 4:22-cv-1141<br><br>DISTRICT JUDGE<br>JAMES R. KNEPP II<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

      Pro se Petitioner Johnny Ray Wallace filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Wallace is in custody at the Marion Correctional Institution due to a journal entry of sentence in the case *State v. Wallace*, Mahoning County Court of Common Pleas, Case No. 17 CR 1301. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

      **Summary of facts**

      In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Seventh Appellate District summarized the facts underlying Wallace's conviction as follows:

> {¶2} On November 28, 2017 the victim, Collin Brown, and his girlfriend, Casey Pemberton, visited the Last Call Lounge to meet with friends. (Trial Tr., p. 282.) The building consists of a bar area and a billiards room which are separated by an interior door that is typically kept closed. To gain entry into the bar area from the outside, patrons must press a button located near the exterior door and wait to be let in by a bartender who presses a "buzzer" to unlock the door.
>
> {¶3} Brown and Pemberton frequently visited the bar and were considered well-known regulars. On the night of the incident, Lisa Cappitti served as bartender. Cappitti was familiar with both Brown and Pemberton. When they arrived, they joined Pemberton's friend, Robin Castro. Castro was seated on the barstool closest to the restroom area. (Trial Tr., p. 303) The restrooms are to the left when facing the bar and less than five feet from Castro's seat. Pemberton sat down next to Castro. Brown stood behind her as no other seats were available.
>
> {¶4} At some point, Brown went to the jukebox where he was met by someone named Jim. Brown returned to the bar and told Pemberton that he had to use the men's room, apparently to avoid Jim, who was known for being talkative. Both Pemberton and Castro testified that Jim followed Brown into the restroom. Then, Appellant got up from his seat at the bar and said "[h]ell the fuck no," and walked into the restroom. (Trial Tr., p. 357.) He pulled Jim out of the restroom, telling him "not now, Jim. You gotta wait." (Trial Tr., p. 357.) Pemberton testified that she entered the men's restroom to check on Brown and he told her that he was fine and would be right out. She testified that Brown and Appellant were the only people inside the restroom at that time.

2

{¶5} Shortly thereafter, a gunshot was heard from inside the men's room. According to Pemberton, she looked at the restroom door and saw Appellant walk out with a smirk on his face. (Trial Tr., p. 289.) She jumped up and ran to the men's room, crossing paths with Appellant just before she entered. She asked him what he had done as she entered the men's room and found Brown laying on the ground.

{¶6} According to Castro, she makes a habit of watching the restroom door and the security monitor, both of which are visible in the same line of sight when someone sitting on that stool looks forward. She does this because she often helps "buzz" people inside when the bartender is busy, although Cappitti stated that she had asked Castro several times not to use the buzzer. Castro testified that Pemberton was not watching the restroom door, but she admitted that she was not looking at Pemberton, because she focused on watching the security monitor. Castro testified that Pemberton asked her who was inside the men's room when they heard the gunshot. Castro responded that the only occupants were Brown and Appellant, who she referred to as "Tre." (Trial Tr., p. 358.)

{¶7} Pemberton jumped up and ran to the men's room. Castro followed behind. They crossed paths with Appellant and Castro heard Pemberton ask him what he had done. Castro saw Appellant fumble with his hat as he exited the restroom. She testified that the hat, which appeared to be a stocking cap, fell off of his head. He made a lazy effort to catch it, but was preoccupied with tucking in his shirt. The hat fell to the ground and Appellant left without retrieving it. Castro heard Appellant say to someone "I gotta get the hell—we gotta get the hell out of here" as he left. (Trial Tr., p. 378.)

{¶8} When police arrived, Cappitti informed them that someone named "Tre Loc" shot Brown. (Trial Tr., pp. 455; 538.) She showed officers a photo of Appellant and described him as a black male with long dreadlocks. Investigators located a black knit

3

stocking cap by the restroom door that was consistent with Castro's description of Appellant's hat. (Trial Tr., p. 492.) DNA testing on a sample obtained from an area inside the hat that would be expected to rest against the wearer's forehead was consistent with Appellant's DNA profile. (Trial Tr., p. 656.) Testing on the hat also revealed the presence of gunshot residue. (Trial Tr., p. 564.)

{¶9} Police located Appellant and searched his residence. They seized boxes of various caliber ammunition and a holster. When police arrested and transported Appellant to the police station, they noticed that his hair was short and choppy, as if it had been cut in a hurry. He admitted to the officers that he had seen his photograph on the news and asked his girlfriend to cut his hair. (Trial Tr., p. 543.) Appellant gave a confusing statement to police, both denying that he had been inside the restroom and that he was not the only one in the restroom. He denied that his nickname is "Tre Loc," but officers pointed to tattoos on each hand reading "Tre Loc." (Trial Tr., p. 717.) Appellant did not respond.

{¶10} On December 7, 2017, Appellant was indicted on one count of murder, an unclassified felony in violation of R.C. 2903.02(A), (D), with an attenuated firearm specification in violation of R.C. 2941.145. Trial was held, but the jury deadlocked and a mistrial was declared.

{¶11} On August 2, 2018, the state filed a superseding indictment that included not only the original charges but also an additional charge of having a weapon while under a disability, a felony of the third degree in violation of R.C. 2923.13(A)(2), (B). The weapons disability charge was severed and tried in a bench trial at the close of the second jury trial. On retrial, the jury at one point informed the court that it could not reach a unanimous decision and the court provided a "*Howard* charge." *See State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989) (a charge given to a deadlocked jury in order to encourage it to reach a decision.) The jury did reach

4

> a verdict thereafter, and found Appellant guilty on both the murder and firearm specification charges. The court found Appellant guilty of the weapons disability charge.
>
> {¶12} On July 16, 2019, the trial court sentenced Appellant to three years of incarceration for the firearm specification, to run prior to and consecutive to Appellant's sentence of fifteen years to life for murder. That sentence was ordered to run consecutive to Appellant's sentence of thirty-six months for his weapons disability conviction. Thus, Appellant received an aggregate total of twenty-one years to life in prison. The court credited Appellant with 590 days of time served. This timely appeal followed.

*State v. Wallace*, No. 19 MA 0093, 2021 WL 4271772, at *1–3 (Ohio Ct. App. Sept. 13, 2021).

**Relevant procedural background**

*Direct appeal*

After he was sentenced, Wallace, through new counsel, appealed to the Ohio court of appeals. Doc. 6-1, at 19, 27 (Exhibits 9, 12). In his brief, he challenged his convictions. *Id*. at 28–30. In September 2021, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 88–112 (Exhibit 15).

*Ohio Appellate Rule 26(B) Application for reconsideration and reopening*

In October 2021, Wallace pro se filed in the Ohio court of appeals an Ohio Rule 26(B) "Application for reconsideration (\*reopening)." Doc. 6-1, at 113 (Exhibit 16). He asked the court to reconsider its September 2021 decision. *Id*.

5

He also alleged that he received ineffective assistance of appellate counsel for counsel's failure to raise on direct appeal the following assignment of error:[1]

> 1. [I]n raising this state statutory and federal constitutional due process and equal protection assignment, appellant does so from the position that at least (3) three penalty phase errors (clearly evident in the record) implicate appellate counsel's performance as both *grossly deficient and *prejudicial. see: Strickland, supra.
>
>> First, *** the trial court's sentencing journal entry imposes a sentence of: "for a total of twenty-one (21) years in prison." id., at: ENTRY, page 1, line 27. (emphasis added).
>>
>> Secondly, *** the trial court's post-release control notification is as well facially contrary to law wherein it imposes an optional period of post-release control of: ["up to three years"].
>>
>> Finally, *** the trial court's sentencing judgment entry indicates that appellant was credited for: *590 days of jail-time credit, however, there is no evidence in the record that the trial court had relied on any Booking Sheet from the Mahoning County Sheriff nor did the trial court ever issue upon any judicial calculation of jailtime to be credited 'in open court' upon the record.

Doc. 6-1, at 115, 117, 119.

---

[1] Wallace's grounds for relief are reproduced as written. Because the second-assigned error Wallace raised in his application to reopen isn't relevant to his federal habeas claims, I have omitted it.

On March 31, 2022, the Ohio court of appeals dismissed Wallace's application for reconsideration as untimely. *Id.* at 169–70 (Exhibit 19). The court found that Wallace's application for reopening was timely, *id.* at 170, but rejected it on the merits, *id.* at 171–75. As for Wallace's argument that the trial court failed to include Wallace's "life tail within its judgment entry when it imposed his aggregate sentence," the court explained that the trial court correctly announced at the sentencing hearing that Wallace was to serve "15 years to life" in prison on the murder count and a total of "21 years to life in prison." *Id.* at 172. The court observed that the trial court's sentencing entry correctly stated that Wallace was to serve 15 years-to-life in prison for murder. *Id.* But the entry listed Wallace's aggregate sentence as "'[21] years in prison,' omitting the life tail." *Id.*; *see also id.* at 16 (sentencing entry). After discussing relevant Ohio law, including *State v. Henderson*, 162 N.E.3d 776 (Ohio 2020), the Ohio court of appeals concluded:

> Because the trial court correctly imposed the life tail at the sentencing hearing when discussing both the individual and aggregate sentence, and then again when discussing the individual sentence within its entry, the failure to include the life tail in the aggregate sentence within the entry is clearly a mere clerical mistake. Thus, the error is correctable through a nunc pro tune entry.

Doc. 6-1, at 172–74. So the court remanded for the trial court to correct the sentencing entry. *Id.* at 178. The Ohio court of appeals also denied as moot Wallace's motion for appointment of counsel. *Id.* at 177.

7

On April 4, 2022, the trial court issued a corrected sentencing entry. Doc. 6-1, at 179–80 (Exhibit 20).

On April 25, 2022, Wallace filed a pro se notice of appeal in the Ohio Supreme Court. Doc. 6-1, at 182 (Exhibit 21). In his memorandum in support of jurisdiction, he set forth the following propositions of law:

> 1. [T]he appellate court violated due process and equal protection of law, U.S.C.A. Const. Amend. 14, when, and after affirming the judgment of conviction and sentence, Wallace I, and denying both appellant's pro se application for *reconsideration and *reopening, remanded for nunc pro tunc resentencing the sentence it had affirmed.
>
> 2. Pursuant to App. R. 26(B)(6)(a), the appellate court must appoint counsel to an *indigent appellant, U.S.C.A. Const. Amend. 6; and, Strickland v. Washington, 466 U.S. 668 before rendering a judgment of remand for *resentencing where it had previously affirmed the judgment of conviction and sentence.

Doc. 6-1, at 185 (Exhibit 22). On June 7, 2022, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Wallace's appeal. *Id.* at 205 (Exhibit 24).

*Federal habeas corpus petition*

In June 2022, Wallace filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. 1. He raised the following grounds for relief:

> **Ground one**: [W]here a state appellate court, and after affirming a trial court's judgment of conviction and sentence, and there upon denying both an applicant's ('pro se') ['application for reconsideration']; and, ['application for reopening'] App. R. 26, violates due process and equal

8

> protection, when it ('without appointing counsel') remands ('without jurisdiction') for *resentencing nunc pro tunc.
>
> **Ground two**: [P]ursuant to Appellate Rule 26(B)(6)(a), an appellate court must appoint counsel to an *<u>indigent</u> appellant in an action for ['reopening'] that results in a remand for resentencing.

Doc. 1, at 13–19. The Warden filed a Return of Writ, Doc. 6, and Wallace filed a Traverse, Doc. 7.

**Legal Standard**

If, like here, a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

9

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for

10

instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1. Ground one is not cognizable or fails on the merits*

In ground one, Wallace argues that his due process and equal protection rights were violated when the Ohio court of appeals ruled on his Rule 26(B) application to reopen. Doc. 1, at 13. Wallace contends that the court erred when it remanded the case for the trial court to issue a nunc pro tunc entry correcting its sentence entry, because the Ohio court of appeals in the same order denied his Rule 26(B) application to reopen on the merits and had previously affirmed

11

Wallace's conviction and sentence. *Id.* He submits that the Ohio court of appeals lacked jurisdiction, under these circumstances, to remand his case. *Id.*; *see also* Doc. 7, at 4. In support of his argument, Wallace relies on Ohio law, including *State v. Henderson*, 162 N.E.3d 776 (Ohio 2020), in which the Ohio Supreme Court held that a party may not challenge a voidable sentence through a postconviction motion for resentencing. *See* Doc. 1, at 13–17; Doc. 7, at 3–16.

An Ohio Rule 26(B) application to reopen is a state collateral proceeding.[2] *See Lopez v. Wilson*, 426 F.3d 339, 353 (6th Cir. 2005) ("Ohio's Rule 26(B) procedure is a collateral post-conviction remedy and not a direct appeal"); *see Morgan v. Eads*, 818 N.E.2d 1157, 1162 (Ohio 2004) ("[W]e continue to adhere to the position that the App.R. 26(B) process represents a collateral postconviction remedy and is not part of the original appeal."). And the Sixth Circuit "has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) and *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir. 1986)); *see Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854 (6th Cir. 2017); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on

---

[2] In support of ground one, Wallace relies on *Wolfe v. Randle*, 267 F. Supp. 2d 743 (S.D. Ohio 2003). Doc. 7, at 15. But *Wolfe* dealt with Ohio's direct appeal procedures, not collateral procedures. 267 F. Supp.2d at 746–48.

12

state-law questions."). So ground one, in which Wallace challenges the Ohio court of appeals' process for ruling on his Rule 26(B) application to reopen, is not cognizable.

Wallace's claim that the Ohio court of appeals lacked jurisdiction to remand the case, Doc. 1, at 13–14, Doc. 7, at 9–11, is not cognizable for an additional reason. "[A] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction [in the state court] for purposes of federal habeas review." *Jones v. Floyd*, No. 20-2080, 2021 WL 3411802, at *1 (6th Cir. May 27, 2021) (quoting *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001)); *see also Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) ("Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary.").

To the extent that ground one could be construed as alleging a federal constitutional violation, it would fail on the merits. First, Wallace hasn't challenged the Ohio court of appeals' finding that the trial court at sentencing ordered Wallace to serve 15 years-to-life in prison on the murder count and an aggregate term of 21 years-to-life in prison. *See* Doc. 6-1, at 173; *see also Wallace*, 2021 WL 4271772, at *3 (Ohio court of appeals' direct-review decision stating that the trial court sentenced Wallace to a total of 21 years-to-life in prison). He hasn't challenged the Ohio court of appeals' finding that the trial court's sentencing entry correctly stated that Wallace was to serve 15 years-to-life on the murder count but omitted the life tail when it listed Wallace's

13

aggregate sentence as 21 years in prison. Doc. 6-1, at 173; *see also id*. at 16. So he hasn't shown that the trial court's nunc pro tunc entry did anything other than correct a clerical error, which Ohio law authorizes. *See State v. Lester*, 958 N.E.2d 142, 149 (Ohio 2011) ("Nunc pro tunc entries are used to make the record reflect what the court actually decided"); *see also* Ohio Criminal Rule 36 ("Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time.").

Second, Wallace hasn't shown that the Ohio Supreme Court unreasonably applied federal law in violation of his constitutional rights.[3] The basis for his argument is that the Ohio court of appeals misapplied *Henderson*. *See* Doc. 1, at 15–16, Doc. 7, at 16. In *Henderson*, the trial court at the sentencing hearing and in its sentencing entry erroneously ordered the defendant to serve 15 years in prison on a count which state law mandated a 15 years-to-life sentence. 162 N.E.3d at 789. Twelve years after sentencing, the State filed a post-conviction motion for resentencing and identified the error. *Id*. The Ohio Supreme Court held that because the trial court's incorrect sentence was voidable, the State could only challenge the sentence on direct appeal, which it had not done and could no longer do. *Id*. So the court affirmed

---

[3] The decision this Court reviews is the Ohio Supreme Court's rejection of Wallace's appeal of the Ohio court of appeals' ruling on Wallace's Rule 26(B) application to reopen. Even though the Ohio Supreme Court didn't explain its reasons for denying Wallace relief, *see* Doc. 6-1, at 205, its decision is entitled to deference under section 2254(d). *See Harrington*, 562 U.S. at 98.

14

the trial court's original, unlawful sentence. *Id.* at 790. Here, unlike in *Henderson*, the trial court announced Wallace's lawful sentence at the hearing; it's sentencing entry in part contained a clerical error; and the error could be corrected by a nunc pro tunc entry. Doc. 6-1, at 16, 172. So Wallace hasn't shown that the Ohio Supreme Court violated his federal constitutional rights when it rejected his appeal of the Ohio court of appeals' decision.

    2.    *Ground two is not cognizable*

In ground two, Wallace argues that the Ohio court of appeals was required to appoint him counsel because the court's decision "result[ed] in a remand for sentencing." Doc. 1, at 15. This claim is not cognizable for the same reason as ground one—it challenges the state's post-conviction proceeding, which it outside the scope of federal habeas. *See Cress*, 484 F.3d at 853. Moreover, Wallace has no right to counsel in an Ohio Rule 26(B) application to reopen proceeding. *See Lopez*, 426 F.3d at 353.

And the Ohio court of appeals did not remand Wallace's case "for sentencing." It remanded for the trial court to correct its clerical error with a nunc pro tunc entry. Doc. 6-1, at 178. So to the extent Wallace is arguing that he was denied counsel for the trial court's nunc pro tunc entry, he has not shown that a nunc pro tunc entry is a "critical stage" at which the right to counsel attaches. Legal authority indicates otherwise. *See Kennedy v. United States*, 756 F.3d 492, 493 (6th Cir. 2014) ("The Sixth Amendment guarantees a right to counsel at critical stages of a criminal proceeding"); *see Moore v.*

15

*Warden, Richland Corr. Inst.*, No. 2:21-cv-361, 2021 WL 885267, at *4 (S.D. Ohio Mar. 9, 2021) ("'The issuance of the nunc pro tunc judgment entry does not constitute a critical stage of the criminal proceedings'") (quoting *Foster v. Warden, Toledo Corr. Inst.*, No. 1:15-cv-213, 2018 WL 6803733, at *1 (S.D. Ohio Dec. 27, 2018) and collecting cases), *report and recommendation adopted*, 2021 WL 1601213 (S.D. Ohio Apr. 23, 2021).

Finally, in his petition Wallace asks for an "'oral evidentiary hearing' as might be required by law." Doc. 1, at 19. But he hasn't indicated why he believes he is entitled to a hearing or "specified what could be discovered through an evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). And his claims for relief are not cognizable or without merit, so he is not entitled to an evidentiary hearing. *See id.*

**Conclusion**

For the reasons set forth above, I recommend that Wallace's Petition be denied.

Dated: April 12, 2024

                                             */s/ James E. Grimes Jr.*
                                             James E. Grimes Jr.
                                             U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).